**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | |
|---|---|
| **JERMAIN SANTELL HILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 5:18-00994** |
| ) | |
| **T. MILAM, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 35), filed on September 27, 2018; (2) Plaintiff's "Motion for Temporary Restraining Order and Injunctive Relief" (Document No. 39), filed on October 5, 2018; and (3) Plaintiff's letter-form Motion for Summary Judgment (Document No. 58), filed on May 24, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the Defendants in moving to dismiss. (Document No. 38.) Plaintiff filed his Responses, Affidavits, and Supporting Exhibits. (Document No. 44, 47 – 49, 53, and 54.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motion should be granted and Plaintiff's "Motion for Temporary Restraining Order and Injunctive Relief" and letter-form Motion for Summary Judgment be denied.

## PROCEDURAL HISTORY

On June 4, 2018, Plaintiff Hill, acting *pro se*, filed his "Affidavit." (Document No. 1.) In

his "Affidavit," Plaintiff Hill indicated that he wished to initiate an action against Officer Milam, E. Stennet, David Young, FCI Beckley, and the Federal Bureau of Prisons based upon alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) The Court opened a <u>Bivens</u> action based upon Plaintiff's above "Affidavit."

By Order entered on June 5, 2018, the undersigned directed Plaintiff to complete a form Complaint naming individual defendants and stating specific facts as to how each defendant violated his constitutional rights if Plaintiff wished to proceed with his <u>Bivens</u> claim. (Document No. 3.) Additionally, the Court ordered Plaintiff to either pay the filing and administrative fee ($400) or submit an Application to Proceed *in Forma Pauperis* or Without Prepayment of Fees. (<u>Id.</u>) On June 14, 2018, Plaintiff filed his Application to Proceed *in Forma Pauperis* or Without Prepayment of Fees, his Amended Complaint, and Supplement to Complaint. (Document Nos. 4, 5, 6.) On July 5, 2018, Plaintiff filed another Application to Proceed *in Forma Pauperis* or Without Prepayment of Fees, Amended Complaint, and Affidavit. (Document Nos. 9, 10, 11.) (Document No. 9.) As Defendants, Plaintiff named the following: [1] (1) T. Milam, Unit Counselor; (2) David Young, Warden; (3) Mr. Hill; (4) E. Stennet, Unit Manager; (5) William Craddock; (6) Amy Goode; (7) Mr. Thompson; and (8) Medical staff. (Document No. 9) In his Amended Complaint and Affidavits, Plaintiff alleges that Defendants have violated his constitutional rights. (Document Nos. 9, 11 and 14.) First, Plaintiff alleges that Defendants are violating his Eighth Amendment

---

[1] In the Amended Complaint, Plaintiff Hill named both himself and Cynthia Chaney as Plaintiffs. (Document No. 9.) By Order entered on July 6, 2018, the undersigned notified Plaintiff Hill that to the extent he was attempting to represent Ms. Chaney, such was improper. In his most recent Affidavit in Support of his Amended Complaint, Plaintiff specifically notes that he longer wishes to name Ms. Chaney as a Plaintiff in the above action. Accordingly, the Court directed the Clerk to terminate Ms. Chaney as a Plaintiff in the above action.

rights by failing to provide adequate medical care for his back. (Id.) Specifically, Plaintiff states that the condition of his back causes him extreme pain when getting in an upper bunk or when climbing stairs to his upper level cell assignment. (Id.) Despite knowledge of the foregoing, Plaintiff alleges that Defendants refuse to provide him with a lower bunk and lower-level cell assignment. (Id.) Plaintiff also alleges that a prior medical provider determined that an MRI of Plaintiff's back was necessary, but Defendants are refusing conduct an MRI to determine the full extent of Plaintiff's injuries. (Id.) Second, Plaintiff alleges that Defendants are violating his Sixth Amendment right to confer with counsel regarding his pending Section 2255 proceedings. (Id.) Finally, Plaintiff alleges that Defendants have retaliated against him for filing administrative remedies in violation of the First Amendment. (Id.) Specifically, Plaintiff alleges that Defendants are retaliating by (1) attempting to have other inmates harass or attack Plaintiff, and (2) improperly denying Plaintiff visitation with his fiancée. (Id.) Plaintiff seeks monetary relief. (Id.)

By Order also entered on August 17, 2018, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 17.) The Clerk issued process on the same day. (Document Nos. 18 and 19.) On September 27, 2018, the Defendants' filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 35 and 37.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) "With the exception of one claim, Plaintiff's claims must be dismissed for failure to exhaust administrative remedies" (Document No. 37, pp. 9 – 12.); (2) "Plaintiff cannot establish an Eighth Amendment medical claim against defendants" (Id., pp. 12 – 20.); (3) "Plaintiff cannot establish an Eighth Amendment medical claim against Defendants Young and Thompson due to their lack of sufficient personal involvement" (Id., pp. 21 – 22.); (4) "Plaintiff fails to state a viable Sixth Amendment claim against Defendants"

(Id., pp. 22 – 24.); (5) "Plaintiff fails to state a viable First Amendment claim against Defendants" (Id., pp. 24 – 25.); and (6) Defendants are entitled to qualified immunity (Id., pp. 25 – 27.).

As Exhibits, Defendants attach the following: (1) The Declaration of Dominick McLain (Document No. 35-1, pp. 2 – 6.); (2) A copy of Plaintiff's "Inmate History Quarters" dated August 22, 2018 (Id., pp. 8 – 10.); (3) A copy of Plaintiff's medical records (Id., pp. 11 – 168.); (4) The Declaration of Erin Stennet (Id., pp. 169 – 170.); (5) A copy of Plaintiff's Administrative Remedy Generalized Retrieval (Id., pp. 172 – 177.); (6) A copy of Administrative Remedy ID No. 933733 (Id., pp. 179 - 184; (7) A copy a Memorandum from Unit Manager Pine dated December 1, 2017, regarding Plaintiff's visitor application form (Id., p. 186.); (8) A copy a Memorandum dated October 3, 2017, and January 11, 2018, regarding Plaintiff's email (TRULINCS) access (Id., pp. 188 - 189.) ; (9) A copy of Plaintiff's attorney visitation documentation (Id., p. 191.); and (10) A copy of the recorded call list (193 – 194).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 27, 2018, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 38.) On October 5, 2018, Plaintiff filed his "Motion for Temporary Restraining Order and Injunctive Relief." (Document No. 39.) On October 26, 2018, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 44.) In support, Plaintiff filed the following: (1) Plaintiff's Affidavits (Document Nos. 47 and 48.); (2) A copy of Plaintiff's administrative remedy entitled "Sensitive Remedy Request"[2] (Document No. 49.); (3) A copy of Acting Regional Director J. Gilley's Response dated

---

[2] Plaintiff appears to claim that an Officer known as "Officer Act Right" subjected him to sexual harassment. These allegations are asserted in a separate action (Civil Action No. 5:18-cv-1535).

February 4, 2019 , to Plaintiff's "Regional Administrative Remedy Appeal" (Document No. 54, p. 1.); (4) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 27, 2018 (Id., p. 2.); (5) A copy of Warden D.L. Young's Response dated November 14, 2018, to Plaintiff's "Request for Administrative Remedy" (Id., p. 3.); and (6) A copy of Plaintiff's "Request for Administrative Remedy" dated October 16, 2018 (Id., pp. 4 - 5.). On February 14, 2019, Plaintiff filed his Supplemental Response. (Document No. 53.) On May 25, 2019, Plaintiff filed a letter-form Motion requesting a jury trial and summary judgment. (Document No. 58.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

1.     **Failure to Exhaust**:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v.</u>

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this
> title or any other federal law, by a prisoner confined in any jail, prison, or other

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of

_____

correction facility until such administrative remedies as are available are exhausted.

a grievance process through machination, misrepresentation or intimidation." <u>Ross</u>, 136 S.Ct. at

1859-60; <u>also see</u> <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d

523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes

where inmate was unable to file a grievance because prison officials refused to provide him with

the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that

prison officials failed to respond to his written requests for grievance forms were sufficient to raise

an inference that inmate had exhausted his available administrative remedies.)

      If an inmate exhausts administrative remedies with respect to some, but not all, of the

claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted

claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913,

166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a

prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a

complaint contains both good and bad claims, the court proceeds with the good and leaves the

bad.") It appears to be the majority view as well that exhausting administrative remedies after a

Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22

(2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The

rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as

the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to

pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the

pendency of a suit, the administrative process were to produce results benefitting plaintiff, the

federal court would have wasted its resources adjudicating claims that could have been resolved

within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196

F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)]

makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

    For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see

<u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. <u>Id.</u>, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. <u>Id.</u>, § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. <u>Id.</u>, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. <u>Id.</u>, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. <u>Id.</u>, § 542.15(a). The entire process takes

about 120 days to complete. An inmate's submission may be rejected at any level for failure to

comply with the administrative remedy requirements or if the submission is written in an obscene

or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and

whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate

is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection

to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative

remedies concerning the following claims: (1) Plaintiff's assignment to a top bunk and top tier of

the housing unit; (2) Staffs' alleged inference with Plaintiff's right to confer with counsel regarding

his Section 2255 proceeding;[4] (3) Staffs' alleged retaliation against Plaintiff for filing

administrative remedies;[5] (4) Staffs' alleged attempt to have other inmates harass or attack

---

[4] Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider his Sixth Amendment claim. Recently, the Supreme Court made clear the very limited scope of *Bivens* actions and that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted *Bivens* claim is not one of the three *Bivens*-type actions previously recognized by the Supreme Court, closer scrutiny is required. *Id.* The Supreme Court has recognized a *Bivens* remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. *Id.* at 1854-55(citations omitted). Clearly, Plaintiff's Sixth Amendment claim presents "a new *Bivens* context." *See Sebolt v. Samuels*, 749 Fed.Appx. 458, 459 (7th Cir. 2018)(finding that the Supreme Court has not yet declared First and Sixth Amendment violations actionable under *Bivens*); *Rockwell v. Adams*, 2014 WL 2779009, * 4 (S.D.W.Va. June 19, 2014)(finding that *Bivens* did not extend to a Sixth Amendment claim alleging a speedy trail violation). Even assuming Plaintiff's Sixth Amendment claim is a viable claim under *Bivens*, such fails on the merits. The Supreme Court has held that an inmate has no protected right under the Sixth Amendment to communicate confidentially or otherwise with an attorney in a civil case. *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)("As to the Sixth Amendment, its reach is only to protect that attorney-client relationship from intrusion in the criminal setting."); *also see Austin v. United States*, 509 U.S. 602, 608, 113 S.Ct. 2801, 125 L.Ed.2d 488 *1993)("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). Since the issues Plaintiff wished to contact counsel were civil in nature concerning his Section 2255 proceedings, his Sixth Amendment rights were not implicated.

[5] Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider his retaliation claim. This Court as determined that based upon *Ziglar v. Abbasi*, ___ U.S. ___, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), *Bivens* may not be extended to a First Amendment retaliation claims. *See Johnson v. Johnson*, 2018 WL 4374231, * 7 (S.D.W.Va. June 5, 2018); *Lineberry v. Johnson*, 2018 WL 4232907, * 8 (S.D.W.Va. Aug. 10, 2018); *Pumphrey v. Coakley*, 2018 WL 1359047 (S.D.W.Va. March 16, 2018)(J. Berger).

Plaintiff; and (5) Staffs' alleged improper denial of visitation with Plaintiff's fiancée. (Document

No. 37, pp. 10 – 11.) Defendants argue that administrative remedy process was available to

Plaintiff and he should not be excused from exhausting his remedies. (Id.) In support, Defendants

submit the Declaration of Erin Stennet, a Unit Manager at FCI Beckley. (Document No. 35-1, pp.

169 - 170.) Ms. Stennet declares that in her position she has access to SENTRY, the Bureau of

Prisons' online system containing, among other things, information about inmates' administrative

remedy filings. (Id., p. 169.) Specifically, Ms. Stennet states as follows in her Declaration:

4.      A review of SENTRY shows that Plaintiff exhausted his administrative
        remedies with respect to his request to have an MRI.

5.      Plaintiff has not filed any administrative remedies concerning his
        assignment to a top bunk and top tier of the housing unit, his claim that
        staff interfered with his right to confer with his counsel regarding his
        pending § 2255 proceedings, that he was retaliated against for filing
        administrative remedies, that staff attempted to have other inmates harass
        or attack him, or that staff improperly denied his request for visitation with
        his fiancée.

6.      Plaintiff filed administrative remedies on January 29, March 15, April 25,
        May 16, filed two administrative remedies on June 11, and one
        administrative remedy on August 13 and August 28, 2018. All of the
        remedies involved his request for an MRI and his custody/security
        classification, except for the August 28, 2018 remedy, which alleged staff
        misconduct.

(Id., p. 169.) As Exhibits, Defendants attach a copy of Plaintiff's Administrative Remedy History

and Administrative Remedy ID No. 933773. (Id., pp. 172 – 185.) Defendants acknowledge that

Plaintiff exhausted his claim regarding the denial of his request for an MRI. (Id., p. 10.)

In his Response, Plaintiff argues that he exhausted all available administrative remedies.

(Document No. 44, pp. 8 – 12, 14 – 15.) Plaintiff states that he was "initially denied the opportunity

to bring grievance against [his] entire unit team staff, that being Thomas Milam, Erin Stennet,

William Craddock, and Justin Hill from at least April of 2018 until May 2018 especially in light

12

of the issues concerning their misconduct for the purpose of oppression, violating both his eighth and sixth amendment rights." (Id., p. 8.) Plaintiff alleges that Officer Milam "verbally assaulted" him on May 11, 2018, which caused him to not file the "grievance out of fear of his safety." (Id., p. 44.) Plaintiff further states that "it was improper and against BOP policy for Officer Milam to give me a grievance in reference to his own inappropriate conduct." (Id.) Plaintiff claims that the "only grievances that were in fact allowed to the Plaintiff were those that were not in relation to Plaintiff's Unit Team Members, that being Thomas Milam, Erin Stennet, William Craddock, and Justin Hill."[6] (Id., pp. 11 and 14.) Plaintiff further complains that Unit Manager Stennet has failed to provide Plaintiff with an Administrative Remedy Response concerning his Administrative Remedy Request. (Id., p. 12.)

Although Plaintiff argues that the administrative remedy process was unavailable around April 2018 through May 2018, the record does not support such a claim. The record reveals that Plaintiff filed administrative remedies on April 11, 2018, April 25, 2018, May 16, 2018, June 11, 2018, August 13, 2018, and August 27, 2018. (Document No. 35-1, pp. 172 – 185.) The record further reveals that Plaintiff had access to administrative remedy forms prior to April 2018 because Plaintiff filed administrative remedies on January 29, 2018 and March 15, 2018. (Exhibit 2, Attachment A). Plaintiff's claim that he was improperly denied visitation with the fiancée allegedly occurred on December 1, 2017. Plaintiff's claim that he was denied access to email communicates regarding contact with counsel allegedly occurred from September 2017 to February 2018. As stated above, the record reveals that the administrative remedy process was available to Plaintiff during these periods of time. See Ferguson v. Clarke, 2016 WL 398852, * 6

---

[6] Plaintiff acknowledges he was allowed to file administrative remedies concerning his medical claims and there is no evidence that Plaintiff exhausted his claim that medical staff improperly denied him a lower bunk assignment.

13

(W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period). Concerning Plaintiff's claim that Counselor Milam verbally harassed Plaintiff in May 2018, the undersigned finds that the administrative remedy process was available to Plaintiff during this time period. In his Affidavit, Plaintiff states that he sent an email to the Warden on May 11, 2018, complaining that Plaintiff could not obtain an administrative remedy form. (Document No. 14, p. 1.) Plaintiff, however, acknowledges that approximately one hour later on the same day, Counselor Milam provided him with an administrative remedy form. (Id.) In his Response in Opposition to Defendants' Motion, Plaintiff contends that Counselor Milam verbally assaulted him and "slammed his cell door violently" when providing the administrative remedy form.[7] (Document No. 44, p. 10.) Thus, Plaintiff claims that he did not complete and file his administrative remedy

---

[7] Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider his claim of verbal abuse. Plaintiff contends that Defendant Milam violated his constitutional rights by subjecting him to verbal abuse. Specifically, Plaintiff complains that Defendant Milam aggressively yelled at him, called him a "motherfu*ker," and incited other inmates to intimidate Plaintiff. (Document No. 14.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. The verbal harassment or verbal abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *also see Lindsey v. O'Connor*, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Assuming Plaintiff's allegations as true, Plaintiff has also failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Plaintiff merely alleges that he was "intimidated" by two inmates. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. *See Farmer, supra*, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendant Milam knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Milam's alleged misconduct. Plaintiff's claim that Defendant Milam should be liable due to the possibility that Defendant Milam's alleged misconduct could have resulted in Plaintiff's life being threaten by other inmates is insufficient. *See Henslee v. Lewis*, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); *Langston v. Fleming*, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). There is no factual allegation that Defendant Milam, or other inmates, made any type of physical contact with Plaintiff.

request in May 2018, because he was afraid to submit the request to Counselor Milam. (Id.)
Further, Plaintiff now argues that Defendants refused to accept his administrative remedy requests
concerning claims against his Unit Team members. Thus, Plaintiff contends that the administrative
remedy process was unavailable concerning the above unexhausted claims. To the extent Plaintiff
is arguing that staff refused to accept his informal resolution forms (BP-8) or administrative
remedy requests (BP-9) concerning certain individuals, or that he was prevented from submitting
such at the institutional level due to his fear for his safety, such does not establish an unavailability
of the administrative remedy process. See Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y.
2004)(finding inmate's unsupported allegation that prison staff had a practice of destroying or
misplacing grievances was insufficient to prove unavailability of the grievance procedure); Al
Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could
not avoid summary judgment by simply asserting an unsupported allegation that his grievances
were not processed or destroyed, in light of documentary evidence showing that other grievances
were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19,
2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any
details regarding the date the alleged grievances were submitted or to whom they were submitted,
are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd,
534 Fed.Appx. 221 (4th Cir. 2013). Concerning Plaintiff's claim that he was afraid to submit certain
grievances at the institutional level, 28 C.R.F. § 542.14(d) provides that an inmate may initiate the
first step of the administrative remedy process by submitting his request directly to the Regional
Director. There is no allegation or indication that Plaintiff was prevented from pursuing his above
claim pursuant to Section 542.14(d). See Veloz, 339 F.Supp.2d at 516(finding that inmate should
not be excused from exhausting where the administrative remedy procedure offers available

alternative means of exhausting). Finally, Plaintiff argues that he failed to fully exhaust a claim because Unit Manager Stennet failed to provide him with a timely response to his informal resolution request. As stated above, Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extensions, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. To the extent Plaintiff is claiming that he should be excused from fully exhausting his administrative remedies due to the lack of a timely response, such a claim is without merit. It is improper for Plaintiff to forego the administrative remedy process based upon the lack of a timely response because the administrative process allows an inmate to proceed to the next level under such circumstances. See Veloz, 339 F.Supp.2d at 516(finding that inmate should have proceeded to the next level when it became clear that a response to his initial filing was not forthcoming); Creel v. Hudson, 2017 WL 4004579, * 5 (S.D.W.Va. Sep. 12, 2017)(J. Johnston)(declining to excuse exhaustion where the grievance procedure allowed the inmate to proceed to the next level of review if his grievances did not receive an initial answer). Based upon the foregoing, the undersigned finds that the record does not support Plaintiff's claim that the administrative remedy process was unavailable, and Plaintiff should be excused from exhausting his claims. Accordingly, the undersigned recommends that Plaintiff's claims regarding his top bunk and top tier housing assignment, right to confer with counsel, denial of visitation,[8] retaliation, and harassment be dismissed in view of his failure to exhaust the

---

[8] Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider his claim that he was improperly denied visitation. To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the

16

administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. §
542.10, *et seq.*, prior to filing his Complaint.

**2.   <u>No Deliberate Indifference</u>:**

In his Amended Complaint, Plaintiff contends that Defendants are acting with deliberate
indifference in violation of the Eighth Amendment by failing to provide Plaintiff with appropriate
medical treatment and testing for his back. (Document Nos. 9, 11, and 14.) Specifically, Plaintiff
alleges that Defendants refuse to conduct an MRI of his back. (Id.) Plaintiff alleges that a prior
medical provider determined that an MRI of Plaintiff's back was necessary, but Defendants are
refusing conduct an MRI to determine the full extent of Plaintiff's injuries. (Id.)

In their Motion, Defendants argue that Plaintiff cannot establish an Eighth Amendment

---

Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary
incidents of prison life. *Id.*, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that
there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate
in relation to the ordinary incidents of prison life," the inmate's claims have no merit. *Id.* To the extent Plaintiff alleges
a liberty interest in retaining his visitation privileges, the undersigned finds that Plaintiff's claim is without merit. The
denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence.
*See Gaston*, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over
an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative
segregation), and the denial of privileges"); *Hatch v. District of Columbia*, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating
that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the
terms of confinement ordinarily contemplated by a prison sentence"). Furthermore, it is well established that an inmate
has no absolute right to prison visitation or telephone privileges. *See Kentucky Department of Corrections v.
Thompson*, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor
is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently
protected by the Due Process Clause."); *Freitas v. Ault*, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an
involuntary transfer to a higher-security facility and   loss of work and phone privileges did not constitute atypical and
significant hardship); *Alkebulanyahh v. Ozmint*, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), *aff'd*, 358 Fed.Appx.
431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in *Sandin*."); *Principio v. McGinnis*,
2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages,
recreation and conjugal visits," was not an atypical or significant hardship); *Richardson v. Johnson*, 2001 WL 360843,
* 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions,
do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life);
*James v. Odom*, 2000 WL 1136563, *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store,
phone, and visiting privileges" did not constituted an atypical or significant hardship); *Ozolina v. Durant*, 1996 WL
82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under *Sandin*, "there is no right to visitation protected by the Due Process
Clause."); and *White v. Keller*, 438 F.Supp. 110, 114 (D.C.Md. 1997), *aff'd*, 588 F.2d 913 (4th Cir. 1978)("[T]here is
no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is
claiming his liberty interest in retaining visitation privileges were violated, the undersigned finds that Plaintiff's claim
is without merit.

medical claim. (Document No. 37, pp. 12 – 20.) Defendants argue that even assuming Plaintiff's back pain is objectively serious, Plaintiff cannot satisfy either the objective or subjective components. (Id.) Defendants contend that Plaintiff was provided with timely and proper medical treatment. (Id.)

In Response, Plaintiff contends he was in a motor vehicle accident on October 8, 2016, wherein suffered injury to his back. (Document No. 44, pp. 1 - 15.) Plaintiff states that he was evaluated at Thomas Memorial Hospital and physical therapy was ordered. (Id.) Plaintiff states that he was arrested one week later. (Id.) In August 2017, after being in custody for approximately ten months at South Central Regional Jail, Plaintiff alleges that Dr. Baldera ordered an MRI to determine the extent of Plaintiff's injuries due to Plaintiff's continued complaints of pain. (Id.) Plaintiff explains that approximately one month later, he was transferred to FCI Beckley prior to the MRI being conducted. (Id.) Plaintiff alleges that upon arrival at FCI Beckley, he notified medical staff of his back injury and that an MRI as necessary. (Id.) Plaintiff argues that Defendants disregarded his need for the MRI despite numerous requests. (Id.) Plaintiff further contends that United States District Judge John T. Copenhaver sent a letter to Warden recommending that Plaintiff be provided a proper examination to determine the extent of his injuries. (Id.) Plaintiff alleges that Judge Copenhaver's recommendation was also disregarded. (Id.) Plaintiff argues that he now "suffers hip problems and has trouble walking in general, or sitting even without experiencing extreme pain." (Id.) Finally, Plaintiff argues that "contrary to the Defendants' assertion, there is overwhelming evidence of more than a mere disagreement of medical treatment, but instead shows that the Defendants blatantly neglected the Plaintiff's medical need." (Id.) Plaintiff further files a Motion for Summary Judgment stating there are no genuine issues of material fact and he is entitled to judgment in his favor. (Document No. 58.)

18

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human

need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant disregarded the serious physical consequences.

Plaintiff alleges that Defendants acted with deliberate indifference in failing to provide adequate treatment and testing for his back condition. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his back condition caused continuous severe pain and suffering. Accordingly, the undersigned will assume for purposes of the motion that Plaintiff's injuries were serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants acted with deliberate indifference

to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends Defendants acted with deliberate indifference in failing to provide him with timely and appropriate treatment for his back condition. By Judgement Order entered on September 8, 2017, Judge Copenhaver recommended that the BOP designate Plaintiff to "an institution where he can be afforded the benefit of a physical examination in order to determine his medical needs." (Criminal Action No. 2:16-00210, Document No. 53, p. 2.) Plaintiff arrived at FCI Beckley on September 21, 2017, and a health screening was conducted the same day by Registered Nurse ("RN") Robert Bailey. (Document No. 35-1, pp. 32 - 37.) Plaintiff reported low back and left hip pain caused by a motor vehicle accident in October 2016. (Id.) Plaintiff stated that he had been scheduled from an MRI. (Id.) RN Bailey prescribed Acetaminophen and Naproxen for pain. (Id.) On October 4, 2017, Plaintiff was examined by Dr. Dominick McLain. (Id., pp. 26 – 30.) Dr. McLain noted that Plaintiff had been involved in a motor vehicle accident and had chronic low back and left hip pain and tingling sensation down his legs at times. (Id.) Plaintiff reported pain with prolonged standing, excessive walking, and at time when lying down. (Id.) Plaintiff informed Dr. McLain that he was supposed to have an MRI on his back, but was incarcerated before it was performed. (Id.) Plaintiff reported his pain was a six on a scale of ten. (Id.) Plaintiff denied any incontinence of the bladder or bowels. (Id.) Plaintiff indicated that his pain and tingling was managed by medications and relieved somewhat by lying down. (Id.) Upon examination, Dr. McLain noted straight leg raise test produced low back pain but no muscle weakness. (Id.) Dr. McLain ordered x-rays of Plaintiff's spine, hip, and feet. (Id.) Dr. McLain continued the prescription for Acetaminophen and Naproxen for pain. (Id.) Finally, Dr. McLain added Plaintiff to the Chronic Care Clinics for orthopedic/rheumatology. (Id.)

On the same day, Plaintiff was also evaluated by Physician Assistant ("PA") Goode. (Id., pp. 38 – 49.) Plaintiff again reported chronic low back and left hip pain since the motor vehicle accident. (Id.) Upon examination, PA Goode noted no deformity or tenderness to the spine with a full range of motion. (Id.) PA Goode noted Plaintiff's prescriptions for Acetaminophen and Naproxen for pain. (Id.) X-rays of Plaintiff's back, hip, and feet were performed six days later on October 10, 2017. (Id., pp. 85 - 86.) The x-rays of Plaintiff's back revealed minimal chronic anterior wedging of L1 and the remaining lumber vertebral bodies demonstrated normal height and alignment. (Id.) The disc spacing was preserved. (Id.) The x-rays further revealed normal lumbar lordosis and no facet arthropathy. (Id.) The x-rays of Plaintiff's left hip showed no evidence for acute fracture, no joint space malalignment or abnormality, no soft tissue abnormality, and normal bone mineralization for his age. (Id., p. 86.) The x-rays of Plaintiff's feet showed no evidence of acute fracture, no joint space abnormality, no soft tissue abnormality, and normal bone mineralization for his age. (Id., p. 86.)

On October 24, 2017, Plaintiff reported to sick call stating "I want an MRI of my back that I was supposed to have before I got here." (Id., pp. 20 – 23.) Plaintiff reported that his low back pain "comes and goes." (Id.) Plaintiff further reported numbness/tingling sensation in both legs. (Id.) Plaintiff again denied any bladder or bowel incontinence, any weakness of the lower extremities, and any falls. (Id.) Plaintiff reported that his pain was worse at times with prolonged standing, walking or jumping. (Id.) Plaintiff stated the pain was better lying down, but if he laid too long in the same position it would hurt. (Id.) Plaintiff further stated that his back would "go out and lock up" at times. (Id.) Plaintiff reported having physical therapy in the past, but stated that it did not help. (Id.) Plaintiff was evaluated by PA Goode, who noted that his recent x-ray revealed minimal chronic anterior wedging of the L1 but was otherwise normal. (Id.) Upon

examination, PA Goode noted that strength in the lower extremities was symmetric, both a straight leg raise test and crossed straight leg test were normal, normal gait, full range of motion, no atrophy or wasting of muscles, and normal internal and external rotation of his hips. (Id.) PA Goode instructed Plaintiff on stretching exercises for low back pain. (Id.) PA Goode further offered Cymbalta or Amitriptyline for neuropathic pain, but Plaintiff refused the medications. (Id., pp. 20 – 23, and 81.) Plaintiff informed PA Goode that he wanted an MRI to find out why his back hurt. (Id., pp. 20 – 23.) PA Goode noted that she explained to Plaintiff that there were no neurological deficits on the physical exam that would warrant an MRI of the lumbar spine. (Id.) PA Goode advised Plaintiff to continue Acetaminophen and Naproxen for pain, encouraged Plaintiff to try the stretching exercises, and directed Plaintiff to return to sick call if his symptoms worsened or persisted. (Id.) Finally, PA Goode noted that she would have Plaintiff sign a medical records release to try to obtain records from outside the BOP. (Id.)

On November 17, 2017, Plaintiff was evaluated by PA Goode for a medical condition unrelated his back pain. (Id., pp. 17 – 19.) On November 30, 2017, Plaintiff was evaluated for a follow-up concerning the unrelated medical problem. (Id., pp. 14 – 16.) During the visit, Plaintiff inquired as to whether his medical records had been requested from an outside source. (Id.) It was noted that his medical records had been requested from South Central Regional Jail, but the records had not yet been received. (Id.) Specifically, it was noted that Plaintiff signed a medical release on October 24, 2017, and such was faxed to South Central Regional Jail on October 25, 2017. (Id., pp. 14 – 16, 79, 80, 82 – 83.) Plaintiff reported his back pain was a six on a scale to ten. (Id., pp. 14 – 16.) It was noted that Plaintiff refused medication for his back pain, but requested to have an MRI. (Id.) It was again noted the x-ray of Plaintiff's back showed only minimal chronic anterior wedging of L1 and was other unremarkable. (Id.)

23

In a letter addressed to Plaintiff dated November 30, 2017, Judge Copenhaver acknowledged receipt of a communication from Plaintiff complaining of the lack of adequate medical care and requesting that the Court either reissue its recommendation to the BOP, notify the BOP of Plaintiff's injury, or relocate Plaintiff to a proper facility. (Document No. 44, p. 38.) In response, Judge Copenhaver stated, in pertinent part, as follows (Id.):

> As you are aware, the court recommended that the BOP afford you the benefit of a physical examination in order to determine your medical needs. I am informed by the United States Probation Office that your presentence report, which documents your physical condition in Paragraphs 70 through 76, was provided to the BOP on September 11, 2017. The Court is without authority to relocate you to a different facility. I am sending a copy of your letter, along with this letter, to Warden David Young, in order to reiterate the court's recommendation and to inform the institution of your physical condition in the event the presentence report has not been received at FCI Beckley.

On December 19, 2017, Plaintiff was evaluated by PA Goode after complaining of back pain and reporting no relief with use of Acetaminophen and Naproxen. ((Document No. 35-1, pp. 11 – 13.) Plaintiff requested that his prescription for Naproxen be changed to Ibuprofen. (Id.) Plaintiff described his pain as aching and rated it as a six on a scale to ten. (Id.) Plaintiff again requested an MRI. (Id.) Plaintiff denied any new injuries, bladder or bowel incontinence, and weakness of his lower extremities. (Id.) It was noted that Plaintiff was again offered Cymbalta and Amitriptyline for pain, but he refused the medications. (Id.) Plaintiff advised that he had taken Neurontin before he was incarcerated, but PA Goode explained that Neurontin was not on the BOP's formulary. (Id.) PA Goode examined Plaintiff and prescribed Ibuprofen in lieu of Naproxen for pain. (Id.)

On January 31, 2018, Plaintiff was evaluated by PA Goode during a Chronic Care visit. (Id., pp. 124 – 130.) Plaintiff stated that "I just want to know why I have the pain in my back." (Id.) Plaintiff again denied any bladder or bowl incontinence. (Id.) Plaintiff reported that his back

pain was worse after sitting. (Id.) Plaintiff rated his pain as a six on a scale to ten. (Id.) PA Goode noted that Plaintiff's medical records had been obtained from South Central Regional Jail and were reviewed. (Id.) PA Goode further discussed Plaintiff's report of tingling and pin prick sensation in his legs. (Id.) Upon examination, PA Goode noted normal muscular strength, normal gait, and normal reflexes. (Id.) It was noted that Plaintiff was again offered neuropathic pain medications, but Plaintiff refused. (Id.) PA Goode continued Plaintiff's prescriptions for Acetaminophen and Ibuprofen for pain. (Id.) Plaintiff was examined at Health Services for complaints unrelated to his back on the following dates: February 20, 2018; February 22, 2018; March 1, 2018; March 9, 2018; June 14, 2018; June 29, 2018; and July 3, 2018. (Id., pp. 95 – 123.)

On July 9, 2018, Plaintiff was evaluated by Dr. McLain during a Chronic Care visit. (Id., pp. 90 – 94.) Plaintiff described his pain as aching and rated it as a five on a scale to ten. (Id.) Upon examination, Dr. McLain noted that the straight leg raise test produced low back pain, but no muscular weakness. (Id.) It was noted that Plaintiff was able to ambulate without difficulty. (Id.) Dr. McLain continued Plaintiff's prescriptions for Acetaminophen and Ibuprofen for pain. (Id.)

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The foregoing does not exhibit that Defendants knew of and disregarded Plaintiff's need for medical treatment or testing. Contrary to Plaintiff's allegations, neither Judge Copenhaver's Judgment Order recommendation nor his letter establish that Plaintiff was receiving inadequate medical care or that an MRI was medically necessary. Judge Copenhaver merely notified the BOP that Plaintiff had suffered an injury to his back and recommended that the BOP provided Plaintiff with a physical examination to determine his medical needs. The undisputed medical record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request and chronic care visit. Defendants consistently evaluated Plaintiff's condition, ordered x-rays, and prescribed

25

medications. The record further reveals that Plaintiff refused neuropathic pain medications despite medical staff's advice that such medications would likely relieve some of his symptoms. Thus, the medical records reveal that Defendants made sufficient efforts to treat Plaintiff's back condition and chronic pain. Plaintiff appears to simply disagree with the appropriate course of treatment. Specifically, Plaintiff is insistent that an MRI is necessary to determine the cause of his back pain. An inmate's disagreement with his medical care or the course of treatment generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."). Furthermore, the ordering of an MRI was considered and rejected by Defendants on several occasions. On each occasion, Defendants determined an MRI was unnecessary based upon the Plaintiff's x-ray results and findings made during physical examinations. In arguing that Defendants disregarded his medical need for an MRI, Plaintiff largely relies upon his claim that a prior physician ordered an MRI and Plaintiff was transferred to FCI Beckley before the test could be conducted. Plaintiff explains that while he was in custody at the South Central Regional Jail, Dr. Alfred Baldera ordered an MRI of Plaintiff's back. (Document No. 44, p. 2.) In support Plaintiff attaches page 3 of an unknown document that appears to be a fax to the United States Marshal Service with a summary of Plaintiff's custody status. (Id., p. 37.) Specifically, the summary states as follows: "08/17/2017 9:29 AM – Prisoner Medical Request initiated by Chris Leachman. IM sick call presented with c/o back pain. Dr.

Baldera (provider) requests for MRI/CT imaging of dorsal/lumbar spine. See attached MD notes." (Id.) Plaintiff, however, failed to attach the "MD notes." (Id.) A review of Plaintiff's medical records, however, contradicts Plaintiff's allegation that Dr. Baldera ordered an MRI. (Document No. 35-1, p. 73.) On August 10, 2017, Dr. Baldera indicated that an MRI *may* be needed. (Document No. 35-1, p. 73.) Specifically, Dr. Baldera noted that Plaintiff's "symptoms [are] most likely muscular but the persistence *may* need further evaluation by imagining MRI or CT scanning of the dorsal and lumbar spine." (Id.)(emphasis added). Plaintiff's medical records further reveal that Plaintiff was examined by Dr. Jeremey Fuller on May 4, 2017, who noted that Plaintiff had requested an MRI on multiple occasions and Plaintiff was instructed there was "no clinical indication for MRI at this time." (Id., pp. 74 – 75.) Even assuming Dr. Baldera ordered or recommended the performance of an MRI, such does not establish a constitutional violation. See Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). At most, Defendants may have been negligent in failing to conduct an MRI. It is well recognized, however, that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned finds that Defendants did not act with deliberate indifference in providing medical treatment or testing for Plaintiff's condition.

3.    **Defendants Thompson and Young:**

In his Amended Complaint and Affidavits, Plaintiff appears to contend that Defendants Thompson and Young violated his constitutional rights by failing to ensure that he received proper medical treatment. (Document Nos. 9, 11 and 14.) In their Motion, Defendants Young and Thompson argue that Plaintiff cannot establish an Eighth Amendment medical claim against them due to their lack of sufficient personal involvement. (Document No. 37, pp. 21 -22.) Defendant Thompson argues that he is named as a defendant based upon his supervisory role over the Health Services Department. (Id.) Defendant Thompson argues that he had no involvement in Plaintiff's medical treatment outside of the fact that he was the administrator over the Health Services Department. (Id.) Defendant Young asserts that he is named solely due to his administrative and supervisory position as Warden of FCI Beckley. (Id.) Defendant Young claims that he does not make medical treatment decisions concerning inmates. (Id.) In support, Defendants attach the Declaration of Dr. McLain. (Document No. 35-1, p. 6.) Dr. McLain declares that "Health Services Administrator Thompson and Warden Young are in administrative and supervisory roles at FCI Beckley and do not make medical treatment decisions concerning inmates." (Id.)

In his Response, Plaintiff argues that Defendants Thompson and Young are responsible because they were aware that he was receiving inadequate medical care. (Document No. 44, p. 3.) Plaintiff contends that he "sent several emails to Medical Administrator Kevin Thompson regarding the issue only to receive vague responses over three months later showing the degree of his indifference, and also tacit authorization of his subordinates." (Id.) Plaintiff argues that Defendant Young "blatantly disregard the letter and the Court's recommendation." (Id.) Plaintiff states as follows: "When asked by the Plaintiff if he had received the letter addressing his medical issue, David Young stated to him, 'Oh, so you're Hill? Yeah, I got it, but I don't deal with that stuff, and I forwarded it to my medical staff. Is there anything else?" (Id.) Plaintiff argues that

Defendant Young "failed to properly address the Plaintiff's medical needs in spite of the letter from a District Judge reiterating the Court's medical recommendation of the Plaintiff being afforded the proper medical examination." (Id., pp. 3 – 4.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendants individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Thompson and Young argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendants Thompson and Young violated his constitutional rights with respect to their failure to supervise employees or in responding to his administrative remedies. The

dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Besides responding to administrative remedies, the evidence of record does not indicate any personal involvement by Defendants Thompson and Young concerning the denial of medical care. In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Plaintiff's conclusory claims that Defendants Young and Thompson tacitly authorized the lack of medical care is insufficient. See Moore v. United States, 1987 WL 11280 (S.D.W.Va. March 23, 1987)(Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment.); Evans v. Technologies Applications & Service, Co., 80 F.3d 954, 692 (4th Cir. 1996)(Summary judgment affidavits cannot be conclusory or based on hearsay); also see Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)(citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001)(Courts

are not required "to accept as true allegations that are merely conclusory, unwarranted deductions

of fact, or unreasonable inferences."). To the extent Plaintiff relies upon Judge Copenhaver's letter

and Judgement Order recommendation, such do not establish the necessary personal involvement

by Defendant Young. As explained above, in his letter addressed to Plaintiff, Judge Copenhaver

acknowledged receipt of a communication from Plaintiff complaining of the lack of adequate

medical care and requesting that the Court either reissue its recommendation to the BOP, notify

the BOP of Plaintiff's injury, or relocate Plaintiff to a proper facility. (Document No. 44, p. 38.)

In response, Judge Copenhaver stated, in pertinent part, as follows:

> As you are aware, the court recommended that the BOP afford you the benefit of a
> physical examination in order to determine your medical needs. I am informed by
> the United States Probation Office that your presentence report, which documents
> your physical condition in Paragraphs 70 through 76, was provided to the BOP on
> September 11, 2017. The Court is without authority to relocate you to a different
> facility. I am sending a copy of your letter, along with this letter, to Warden David
> Young, in order to reiterate the court's recommendation and to inform the
> institution of your physical condition in the event the presentence report has not
> been received at FCI Beckley.

(Id.) In the Judgment Order, Judge Copenhaver recommended that the BOP designate Plaintiff to

"an institution where he can be afforded the benefit of a physical examination in order to determine

his medical needs." (Criminal Action No. 2:16-00210, Document No. 53, p. 2.) Contrary to

Plaintiff's allegations, neither Judge Copenhaver's recommendation in the Judgment Order nor his

letter establish that Plaintiff was receiving inadequate medical care or that an MRI was medically

necessary. Judge Copenhaver merely notified the BOP that Plaintiff had suffered an injury to his

back and recommended that the BOP provided Plaintiff with a physical examination to determine

his medical needs. Plaintiff acknowledges that Defendant Young verified receipt of the letter and

advised Plaintiff that such had been forwarded to the medical department. Non-medical prison

personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier

v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). In the instant case, there is no evidence that Defendants Thompson and Young were personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Additionally, as explained above, there is no indication that medical Defendants acted with deliberate indifference to Plaintiff's medical condition. Accordingly, Plaintiff has improperly raised his claim against Defendants Thompson and Young under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court, therefore, finds that Defendants' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted and Plaintiff's letter-form Motion for Summary Judgment should be denied. The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal of Plaintiff's claims.

**4.** __Plaintiff's Motion for Temporary Restraining Order and Injunctive Relief__:

In his "Motion for Temporary Restraining Order and Injunctive Relief," Plaintiff requests that Defendants be restrained from violating his constitutional rights. (Document No. 39.) Plaintiff contends that Defendants are engaging in retaliatory conduct and violating his Sixth Amendment right to consult with counsel. (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in <u>Hoechst Diafoil Company v. Nan Ya Plastics Corporation</u>, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' <u>Granny Goose</u>, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." <u>The Real Truth About Obama, Inc. v. Federal Election Commission</u>., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[9] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." <u>Id.</u> Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization

---

[9] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

For the reasons fully explained above, the undersigned has recommended that Plaintiff's Amended Complaint be dismissed as to all Defendants. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 35),
**DENY** Plaintiff's letter-form Motion for Summary Judgment (Document No. 58), **DENY**
Plaintiff's "Motion for Temporary Restraining Order and Injunctive Relief" (Document No. 39),
and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is
hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene
C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and
Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days
(filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings
and Recommendation within which to file with the Clerk of this Court specific written objections
identifying the portions of the Findings and Recommendation to which objection is made and the
basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*
review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.
Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155
(1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d
91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge
Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to
Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 19, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

35